IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>FORREST EUGENE MAYS (1),<br>KEVIN GARETT SHELTON (5),<br><br>    Defendants. | CRIMINAL ACTION FILE NO.<br><br>1:18-CR-15-AT-JKL |

## ORDER AND NON-FINAL REPORT AND RECOMMENDATION

On March 27, 2018, a federal grand jury seated in the Northern District of Georgia returned a twelve-count superseding indictment against Keven Garett Shelton and four other defendants, Forrest Eugene Mays, Ryan Michael Jackson ("Ryan Jackson"), Devin Van Jackson ("Devin Jackson"), and Keenan Justin Jackson ("Keenan Jackson").[1] [Doc. 31.] Shelton is charged in Count Eleven with possession with intent to distribute methamphetamine, cocaine, marijuana, and alprazolam in violation of 21 U.S.C. §§ 841(a)(l), 841(b)(l)(B), 841(b)(l)(C),

---

[1] As of the date of this decision, Defendant Keenan Jackson has not been arraigned on the charges in the superseding indictment; an arrest warrant and writ of habeas corpus ad prosequendum remain outstanding. [*See* Docs. 42, 43.]

841(b)(l)(D), and 841(b)(l)(E)(2), and in Count Twelve with possession of at least one firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.  [*Id.* at 6-7.]  Those charges arise out of Shelton's arrest on June 29, 2016, when officers with the Atlanta Police Department ("APD") executed a search warrant at Shelton's residence and seized drugs and firearms.

This order and non-final report and recommendation addresses Shelton's Motion to Suppress evidence seized during that June 29, 2016 search of his residence, located at 1875 North Avenue, Atlanta, Georgia [Doc. 85], which Defendant Mays has adopted [Docs. 90, 91], and Shelton's Motion to Disclose Confidential Informants [Doc. 87].[2]  For the reasons that follow, it is **RECOMMENDED** that the motion to suppress be **DENIED** and **ORDERED** that the motion for disclosure be **DENIED**.

**I.  Background**

On June 26, 2016, APD Investigator W. Kellner applied for and obtained a search warrant for Shelton's residence at 1875 North Avenue, Atlanta, Georgia 30318 (the "North Avenue Residence") from a Superior Court Judge in Fulton

---

[2] Shelton has also filed a Motion to Suppress Statement [Doc. 86], in which he moves to suppress statements he made after his arrest on federal charges in April 2018.  The Court will address that motion in a separate report and recommendation.

County, Georgia. [Doc. 85-1 (affidavit, application, and search warrant).] APD officers executed the warrant three days later, on June 29. [*Id.* at 7.] The following facts are based on my review of the application and supporting affidavit.

On June 2, 2016 and June 17, 2016, an APD narcotics team made successful drug buys at a home located at the North Avenue Residence with the assistance of a confidential source (the "CS"). [Doc. 85-1 at 3-4.] The CS had been working with APD narcotics investigators since 1997. [*Id.* at 4.] The CS had helped secure multiple search warrants on homes were narcotics have been recovered, resulting in multiple arrests and convictions. According to Investigator Kellner, he considers the CS reliable. [*Id.*]

The first controlled purchase occurred on June 2, 2016. [Doc. 85-1 at 3.] Undercover investigators drove the CS to a location near the North Avenue Residence. Monitored by audio, via cell phone, and visually by the investigators, the CS went to the North Avenue Residence and entered the front porch area where he[3] encountered an African-American man in his early 20's. The man asked the CS what he was looking for, and the CS replied that he was looking for some

---

[3] The gender of the CS is not apparent from the application; the Court uses the pronoun "he" as a matter of convenience.

"loud," a street term for high quality marijuana.  The man then took government-issued funds from the CS and handed them to another man inside the house.  That man went into the back of the house and then reappeared with marijuana, which he handed to the man who initially met the CS at the door of the house.  That man then handed the marijuana to the CS.  The CS then left the premises.  The CS also noticed a handgun inside the house when he purchased the marijuana.  [*Id.*]

The second buy took place on June 17, 2016, in similar fashion.  [Doc. 85-1 at 4.]  Once again, the CS was dropped off near the North Avenue Residence by undercover investigators, who monitored the transaction by audio and visual means.  On the front porch, the CS met a man in his 20's and again asked for some "loud."  The man took government-issued funds from the CS, handed them to another man whom the CS observed inside the kitchen of the house packaging the marijuana.  Once packaged, the man inside the kitchen handed the marijuana to the man who greeted the CS, who then handed it to the CS.  The CS then walked away from the North Avenue Residence and was picked up by undercover investigators at a nearby location.  [*Id.*]

Before and after each of the two buys, the CS was checked to make sure he was clean of any contraband.  [Doc. 85-1 at 4.]  The marijuana purchased during

both buys was placed into evidence and sent to the Georgia Bureau of Investigation ("GBI") lab for testing. [*Id.*]

Additional facts are discussed in context as necessary in the analysis below.

## II.     Shelton's Motion to Suppress Evidence

### A.     The Parties' Arguments

Shelton moves to suppress the fruits of the June 29, 2016 search of the North Avenue Residence on the grounds that Investigator Kellner's affidavit did not provide sufficient information to the issuing judge to establish the reliability of CS used in the controlled buy. [Doc. 85 at 2.] Shelton points out that the name of the CS was not disclosed to the judge, his criminal history was not provided, and there was no indication whether he was a paid informant or otherwise expected some benefit from providing information to the government. [*Id.* at 2-3.]

The government responds that Shelton's arguments fail because a properly-executed controlled buy of illicit drugs—two of which were executed in this case—is sufficient, standing alone, to establish probable cause, and that the veracity of the CS is immaterial in light of the June 2 and June 17, 2016 buys. [Doc. 102 at 2-3.]

On reply, Shelton argues that the Court should hold a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), "to determine whether the apparent

misstatements contained in the application, along with the previously identified omissions related to the confidential CS, is enough to invalidate probable cause." [Doc. 113 at 1.] Specifically, Shelton maintains that although controlled purchases of illicit drugs are normally sufficient to establish probable cause, the application for the search warrant in this case misrepresented that the controlled buys "were monitored via audio recording," given that APD did not produce or maintain any audio recording that would corroborate the CS's purported statements to the agents contained in the application and affidavit. [*Id.* at 3-4.] Shelton maintains that as a result, whether any corroboration exists for the CS's statements and "whether the buys actually occurred" have both been called into question. [*Id.*]

### B.     Discussion

A judicial officer considering an application for a search warrant must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him or her, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The Eleventh Circuit has "established the following guidelines for determining the validity of a warrant affidavit: (1) demonstration of a connection between the defendant and the location to be searched; (2) demonstration of a link between the location and criminal activity; and (3)

demonstration of the CS's veracity and basis of knowledge." *United States v. Davis*, 313 F.3d 1300, 1303 (11th Cir. 2002) (per curiam) (citing *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002)).

"Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (citation omitted). Instead, "a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." *Id.* (citations omitted). Accordingly, a court reviewing the issuance of a search warrant simply decides "whether the evidence viewed as a whole provided a 'substantial basis' for the [m]agistrate's finding of probable cause." *Massachusetts v. Upton*, 466 U.S. 727, 732-33 (1984) (per curiam); *see also Gates*, 462 U.S. at 238-39 ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.") (internal quotation omitted). In evaluating the probable cause determination, moreover, "[g]reat deference is accorded to the magistrate's determination . . . ." *United States v. Gonzalez*, 940 F.2d 1413, 1419 (11th Cir. 1991).

Considering the totality of the circumstances, the Court concludes that Investigator Kellner's affidavit was sufficient to establish probable cause to support the issuance of the search warrant. Pre-checked for contraband and monitored by APD officers, the CS twice entered the residence without drugs, exchanged government-issued funds for marijuana, and upon his return from the residence, produced marijuana to law enforcement officers. These events indicate the "probable—if not likely—presence of illegal drug activity in the [house]." *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006); *see also United States v. Roundtree*, 299 F. App'x 905, 907 (11th Cir. 2008) ("It is clear that a properly executed controlled buy, as is the one at issue here, is sufficient, standing alone, to establish probable cause."); *United States v. Horne*, 198 F. App'x 865, 871 (11th Cir. 2006) (same and citing *Sidwell*, 440 F.3d at 869).

Moreover, the Court disagrees with Shelton's assertion that the warrant affidavit failed to demonstrate probable cause because APD officers did not sufficiently verify the CS's reliability. Shelton cites no authority to support his assertion that the name of a CS must be revealed in a warrant application. Nor was it necessary, under the circumstances of this case, for Investigator Kellner to provide specific details as to how the CS had proven reliable or trustworthy in the

past. Both the buys were controlled and monitored by law enforcement. Moreover, Investigator Kellner explicitly stated that the CS was a "reliable source" and had been working with APD since 1997—nearly 18 years at the time of the controlled buys—and that the CS's work had resulted in multiple arrests and convictions. Given the totality of the circumstances, the Court sees no basis to second-guess the state court judge's decision that the search warrant was supported by probable cause.

The Court also rejects Shelton's request, first made in his reply, for a *Franks* hearing. Under *Franks*, a defendant may challenge a facially sufficient affidavit if he can show that it contains misrepresentations or omissions that were knowingly or recklessly made. *Franks*, 438 at 155-56, 171. To be entitled to relief, the defendant must show both (1) that the alleged misrepresentations or omissions were knowingly or recklessly made and (2) that the result of excluding the alleged misrepresentations and including the alleged omissions would have been a lack of probable cause for the issuance of the warrants. *United States v. Novaton,* 271 F.3d 968, 986-87 (11th Cir. 2001).

Here, Shelton cannot make the first showing—that there were misrepresentations or omissions knowingly or recklessly made. Investigator

9

Kellner, the affiant, did not state, as Shelton maintains, that an "audio recording" was made of the events; rather, the affiant simply stated that the CS was "monitored by audio, via cell phone, and visually by investigators." [*See* Doc. 85-1 at 3 (June 2, 2016 buy); *see also id.* at 4 ("CS was monitored visually and by audio") (June 17, 2016 buy).] Investigator Kellner therefore did not misrepresent that a recording was made of the transactions or the agents' communications with the CS.  Nor, for the reasons discussed above, did Investigator Kellner omit material information by not disclosing additional information about the CS.  Accordingly, Shelton has not carried his burden to demonstrate that a *Franks* hearing is warranted.

For these reasons, it is **RECOMMENDED** that Shelton's Motion to Suppress [Doc. 85] be **DENIED**.

**III.   Motion for Disclosure of Identity of Confidential Informant**

**A.   The Arguments of the Parties**

Shelton moves for the disclosure of the identity of the CS that Investigator Kellner used to make the two undercover drug purchases detailed in the search warrant affidavit discussed above.  [Doc. 87.]  He maintains that he has been charged in this case simply because he was associated with the individuals who participated in the drug transaction with the CS, in that he merely resided at the North Avenue Residence.  [*Id.* at 1.]  He argues that because the CS is the "only

10

government witness to the [alleged] drug transaction, it is most critical that the defense be allowed to interview the confidential CS in the pre-trial phase of this case." [*Id.* at 1-2 (citations omitted).]

The government responds that the CS was not involved in any transaction that is charged in the indictment; thus, the identity of the CS and any arrangement the government had with the CS is not subject to disclosure. [Doc. 100 at 3, 5.] The CS participated in controlled buys on June 2 and June 17, 2016, whereas Shelton is charged only with offenses that allegedly occurred on June 29, 2016, discovered in the execution of the search warrant for the North Avenue Residence. [*Id.* at 4.] Further, the government states that it is not relying on the CS to identify Shelton or implicate him; rather, the government intends to rely on the police officers who executed the search warrant at the house, as well as his adjudication as a first offender, to inculpate and identify him.[4] [*Id.* at 4-5.] Finally, the government argues that it has a substantial interest in protecting the identity of the CS to protect his safety and prevent possible retaliation. [*Id.* at 5.]

---

[4] Shelton was charged in state court in connection with the June 29, 2016 arrest. In January 2017, he entered a negotiated guilty plea and was adjudicated as a first offender. [*See* Doc. 109-2.]

11

On reply, Shelton argues that even if the CS was not involved in the transactions at issue in the indictment, his testimony is still important because it bears on his "mere presence defense"—that is, his defense that although he may have been present at the location of the charged drug transaction, he was not involved with it. [Doc. 112 at 2-3.] Shelton further contends that the CS possesses information that would show that the officer who obtained the search warrant for the North Avenue Residence was acting in bad faith [*id.* at 3-4]; that the CS's credibility is central to the merits of the motion to suppress the search of the North Avenue Residence [*id.* at 5-6]; that the identity of the CS is in little need of further protection from disclosure [*id.* at 6-7]; and that the government will not be permitted at trial to rely on Shelton's first offender resolution in state court to inculpate him with respect to the charged offenses [*id.* at 7-9].

**B.  Discussion**

The government has a limited privilege to withhold the identity of law enforcement informants prior to trial. *Roviaro v. United States*, 353 U.S. 53, 59 (1957). The purpose of this privilege "is the furtherance and protection of the public interest in effective law enforcement." *Id.* But where the disclosure of an informant's identity or the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the trial

12

court may require disclosure. *Id*. at 60-61. In balancing these interests, the Court must consider "the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony." *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991) (citing *Roviaro*, 353 U.S. at 62). Courts in this Circuit consider the following three factors in evaluating whether the government should be required to reveal the identity of informants: "(1) the extent of the informant's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant; and (3) the government's interest in nondisclosure." *United States v. Flores*, 572 F.3d 1254, 1265 (11th Cir. 2009) (quoting *United States v. Tenorio–Angel*, 756 F.2d 1505, 1509 (11th Cir. 1985) (quotation marks omitted).

Applying these factors, the Court concludes that Shelton has not met his burden to show that the identity of the CS should be disclosed. As to the first factor, there is no indication that the CS participated in the criminal conduct with which Shelton has been charged in this case. Shelton is charged with possession of four different illicit drugs with the intent to distribute and possession of a firearm in connection with drug trafficking, all based on the search warrant's execution on

June 29, 2016.  [*See* Doc. 31 at 6-7.]  There are no charges against Shelton based upon the controlled buys of marijuana with which the CS was involved on June 2 and June 17, 2016.

As to the second factor, Shelton has not shown any nexus between his anticipated "mere presence" defense and the potential testimony of the CS.  Shelton has not come forward with any evidence suggesting CS was a witness to or has personal knowledge concerning the events of June 29, 2016, which form the basis of the charges against him.  "Mere conjecture about the possible relevance of [the CS's] testimony is insufficient to compel disclosure."  *Gutierrez*, 931 F.2d at 1491.

As to the third factor, the Court finds that the government has an interest in protecting the identity of the CS to preserve his anonymity for other investigations and for the CS's protection.  As the Supreme Court recognized in *Roviaro*, the government has an interest in preserving the anonymity of "persons who furnish information of violations of law to officers charged with enforcement of that law" to "encourage them to [continue] to perform that obligation."  *Roviaro*, 353 U.S. at 59. Contrary to Shelton's argument otherwise, the fact that the CS has apparently assisted law enforcement for nearly 20 years and has been compensated for his efforts does not diminish the government's interest.  Moreover, the government has

an interest in protecting the safety of its informant, especially when he is used to furnish information on suspected drug dealers who may be dangerous.

Shelton's arguments on reply do not change this calculus.  First, Shelton's contention that the CS's identity would be helpful in challenging the search warrant for the North Avenue Residence falls flat.  As discussed above, probable cause exists for the search warrant without additional disclosures regarding the CS.  Indeed, "the rule is well-established that the Government need not disclose the identity of an informer when the sole purpose to be served is to attack the probable cause supporting a search warrant."  *United States v. Mendoza*, 433 F.2d 891, 894 (5th Cir. 1970) (citations omitted); *see also United States v. Booker*, 131 F. App'x 234, 241 (11th Cir. 2005) (defendant not entitled to disclosure where the CI's testimony would only have been relevant for determining whether there was probable cause to search the defendant's residence).

Likewise, the identity of the CS is not necessary to determine the good-faith of the officer who obtained the search warrant for the North Avenue Residence.  Shelton contends that "the application for the search contained a statement indicating two controlled purchased were monitored by audio recording," and that the good faith of the officer is suspect because no audio recording has been

15

furnished in discovery. [Doc. 113 at 3.] This argument misconstrues the warrant affidavit previously discussed. The warrant application actually states that the CS was monitored via a cell phone during the transactions; there is no indication that an audio recording of the transactions was made. Thus, the premise of Shelton's argument—that law enforcement has failed turn over or retain a copy of audio recordings—is wrong.

Shelton's contention that "the government concedes . . . that all the evidence [supporting probable cause in the warrant application] is based off the CS's statements regarding what happened during the two alleged controlled buys" is similarly mistaken. [*See* Doc. 112 at 5.] The warrant application shows that it was the full circumstances of the controlled buys themselves that formed the basis for the court's probable cause finding, not just statements that the CS made to officers. As discussed above, law enforcement officers checked the CS for contraband before the buys, monitored the CS during the buys, and searched the CS again after the buys. Moreover, after each purchase, the substance that the CS purchased tested positive for marijuana. All of these details are set forth in the search warrant affidavit and provided probable cause for the search warrant.

Finally, Shelton's argument that that the government will not be permitted to rely on his first offender adjudication at trial has no bearing on the Court's analysis. Even if Shelton succeeds in excluding his prior adjudication at trial, that does not make the CS's testimony any more relevant.

In sum, the Court finds that each of the *Roviaro* factors counsels against disclosing the CS and that Shelton has failed to present any additional basis favoring of disclosure; thus, the motion is **DENIED**.

### IV. Conclusion

For the foregoing reasons, it is **RECOMMENDED** that Shelton's Motion to Suppress evidence seized during the June 29, 2016 search of the North Avenue Residence [Doc. 85] be **DENIED**; and it is **ORDERED** that Shelton's Motion to Disclose Confidential Informants [Doc. 87] be **DENIED**.

Pretrial motions filed by Shelton and Mays remain pending before the Magistrate Judge and will be addressed separately; accordingly, their cases are not yet ready for trial.

IT IS SO ORDERED and RECOMMENDED this 18th day of September 2018.

_____
JOHN K. LARKINS III
United States Magistrate Judge