IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 1:18-cr-15-5-AT |
| KEVIN GARRETT SHELTON, | : | |
| Defendant. | : | |

## **ORDER**

This case comes before the Court on the Magistrate Judge's Report and Recommendation ("R&R") (Doc. 134) on Defendant's Motion to Suppress Statement (Doc. 124). The Report recommends the denial of the Motion.

Under 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate's Report and Recommendation for clear error if no objections are filed to the report. 28 U.S.C. § 636(b)(1). If a party files objections, however, the district court must determine de novo any part of the Magistrate Judge's disposition that is the subject of a proper objection. *Id.;* Fed. R. Crim. P. 59(b)(3). As Defendant filed objections to the R&R with respect to its analysis of Defendant's Motion, the Court reviews the Magistrate Judge's analysis and recommendations on a de novo basis. 28 U.S.C. § 636(b)(1).

Magistrate Judge Larkins succinctly summarized the overarching issues posed by Defendant's motion in which he seeks to suppress all statements that he

made to ATF Special Agents Quenton Marable and Shawn Lee on April 16, 2018, when he was transported from the Cobb County Jail to his initial appearance in federal court on federal charges as follows: "Shelton raises three main issues in his motion: (1) statements he made to the agents before he was given *Miranda* warnings should be suppressed because he made those statements in the context of the functional equivalent of a custodial interrogation; (2) his post-*Miranda* statements should be suppressed because his *Miranda* waiver was not voluntary; and (3) even if his *Miranda* waiver were valid, his post-Miranda statements should still be suppressed because his statements became involuntary due to coercive and deceptive conduct by the agents." (Doc. 134 at 1.) As to each of these three issues, the Magistrate Judge found against the Defendant.

The Court has conducted a de novo review of the Defendant's motion, the transcript of the motion hearing, and exhibits, including the 31-minute audiotape of Agent Marable's interview and communications with Mr. Shelton during the car ride to the federal court. While the Court agrees with the R&R findings as to Defendant's statements subsequent to Agent Marable's provision of the *Miranda* warning, the Court finds that Defendant's pre-*Miranda* warning statements should be suppressed.

ATF Special Agents Marable and Lee picked-up Defendant at the Cobb County Jail on April 16, 2018. Shelton had been held in custody in the county jail since April 14, 2018 on unrelated state charges. While Lee drove the law enforcement vehicle to the federal courthouse, Special Agent Marable conducted

most of the conversation with Shelton in the back seat. Shelton was handcuffed and clearly in custody. The issue in dispute is whether Defendant's pre-*Miranda* remarks were the product of an interrogation or its functional equivalent. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). As the Magistrate Judge explained, "[t]his inquiry "focuses primarily upon the perceptions of the suspect, rather than the intent of the police," and requires inquiry into whether the words or actions of law enforcement constitute coercive pressure "above and beyond that inherent in custody itself." (R&R, Doc. 134 at 11.) (citing *Innis*, 446 U.S. at 300-01.) While the Magistrate Judge particularly relied on *United States v. McKenzie*, 132 F. App'x. 788 (11th Cir. 2005) as persuasive authority, the Court finds the factual posture of the instant case to be materially distinguishable from *McKenzie* as well as the other cases relied upon by the Magistrate Judge.

Agent Marable made a variety of prefatory remarks prior to actually giving the *Miranda* warning.[1] He discussed the seriousness of punishment Shelton would face on federal (vs. state) charges; that the Government had already picked up Defendant's cousins and talked to them regarding the pending criminal charges; and most significantly, that this short slice of time before they reached the federal court would be the "only" opportunity Shelton would have to talk to him and tell

---

[1] The Court adopts the Magistrate Judge's factual summary of the conversation between Agent Marable prior to Marable's giving his *Miranda* warning, except to the extent the Magistrate Judge characterizes Shelton's remarks as an "interruption" that were not elicited by Marable.

him "your side of what's been going on."[2] Without actually giving the *Miranda* warning, Marable then concluded, "So that being said, I want to give you the opportunity to talk to me and we can ask each other questions and talk about what being on, if you want."

The Magistrate Judge viewed Shelton's immediate ensuing question and comments as essentially a wholly independent interruption from Shelton. After listening to the audio tape conversation, considering the circumstances of Defendant's unanticipated sudden physical transfer in custody from the Cobb County Jail to federal custody, and focusing primarily upon the perspective of the suspect, the Court finds that Marable's remarks, as structured, were "reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301. Marable employed an interrogation method designed to elicit the Defendant's immediate verbal response and cooperation to "tell him his side of the story" while in custody. While Marable ultimately jumped back in after Shelton had made some remarks and gave him a *Miranda* warning, the Court finds that Defendant's comments prior to the *Miranda* warning were indeed in response to Marable's statements that were the functional equivalent to interrogation. Agent Marable sought Defendant's explanation of "his side" of the story prior to actually giving the *Miranda* advisory and indicated that this would be the only time Shelton would be able to present this directly. The Court finds that Marable engaged in a calculated

---

[2] Agent Marable followed this by saying, "Because I'm the case agent, I basically gathered all this evidence on you all, and this is basically going to be *your only opportunity* to talk to me face-to-face one on one." (emphasis supplied.)

4

interview strategy to persuade the Defendant to talk and confess in the short time frame available and that this foreseeably resulted in Defendant's quick responsive remarks, prior to the provision of a *Miranda* warning. Viewing this evidence from the perspective of the Defendant, advised that this would be his only chance to explain his side directly and that this time would soon expire as he was transported in handcuffs from a county jail to the federal court, the Court finds that Marable's mode of proceeding pressured the Defendant and constituted the functional equivalent of interrogation. While the interview was short and conducted without direct threats or verbal abuse, the Court cannot find that the Government has carried its burden to show that Defendant's pre-*Miranda* remarks were not in effect acquiescence to Marable's claim of lawful authority and interrogation method.

In *McKenzie*, by contrast, the Defendant arrived at his family's home and was arrested for failure to pay child support one hour after a legally authorized search of the house for unlawful drugs had been initiated pursuant to a search warrant. After being arrested at his home and before being advised of his *Miranda* rights, "McKenzie continually talked to officers, often in an abusive manner. In fact, officers requested McKenzie stop talking on numerous occasions." *McKenzie*, 132 F. Appx. at 788. When one of the officers advised McKenzie that they had found some marijuana and cocaine at the house, McKenzie responded that he smoked marijuana and asked the officer if he thought McKenzie was a user or a dealer – and that he would "blow the machine up" if he was drug tested. Putting

aside that the case is a non-binding unpublished decision, the Court notes that McKenzie was at his own home and not in handcuffs when this conversation proceeded. Due to the course of the conversation, the Court of Appeals concluded "we are not persuaded that Officer Turner should have known that by informing McKenzie of what officers found in McKenzie's room would illicit (sic) the response it did." *Id.* at 790. In contrast, in Shelton's case, as already discussed, the special agent's remarks were functionally designed to elicit Defendant's telling his side of the story. The other cases cited in the R&R (Doc. 134 at 14) are in a different factual or procedural posture than the instant case and are not directly instructive.[3]

The Court concurs with the Magistrate Judge's analysis of the law and evidence pertaining to Defendant's motion to suppress his statements given *after* Agent Miranda provided a full *Miranda* advisory warning and thus, the Magistrate Judge's Recommendation that this portion of the Motion to Suppress be denied. After considering the length, context, and nature of Agent Mirabel's interrogation of Mr. Shelton as well as Defendant's own age and circumstances, the Court finds that the *Miranda* warning was not vitiated by the course of the Agent's questioning. Moreover, while Agent Marable may have used interview techniques

---

[3] *See*, i.e., *Easley v. Frey*, 433 F.3d 969, 974 (7th Cir. 2006) (case arising in deferential AEDPA habeas review context of state court determination of statement made by defendant in response to being advised of serious criminal penalties he was facing during course of a second investigator's interview, after he had declined to give a statement during the first interview by different officers when he was given a *Miranda* warning); *United States v. Payne*, 954 F.2d 199, 202 (4th Cir. 1992) (affirming district court denial of motion to suppress where Defendant apprised of his *Miranda* rights and consulted his attorney and thereafter was immediately transported by FBI agents to Baltimore and volunteered that he just had a gun "for my protection" after told by FBI agent -- who was taking a phone call-- that law enforcement had just found a gun at his house.)

designed to persuade Defendant to give his full cooperation in the half hour car ride to the federal court, the Court concludes that Defendant voluntarily waived his *Miranda* rights after being given a full *Miranda* warning, and that his free will to consent to the interview questioning was not subsequently overcome by the interview tactics used by Agent Marable. *See United States v. Mendoza–Cecelia*, 963 F.2d 1467, 1475 (11th Cir. 1992) *cert. denied*, 506 U.S. 964 (1992) *abrogated on other grounds by Coleman v. Singletary*, 30 F.3d 1420 (11th Cir.1994.) ("Isolated incidents of police deception, and discussions of realistic penalties for cooperative and non-cooperative defendants are normally insufficient to preclude free choice.") (citations omitted). Even considering Defendant's anxious initial provision of information in response to Agent Marable before the *Miranda* warning and the Court's findings in that connection, the Court finds that the Defendant has not shown sufficient evidence of overreaching or psychological ploys and trickery that would cause it to conclude that Defendant's statements post-*Miranda* were given on a non-voluntary basis or induced by such trickery and ploys as to require suppression as a matter of law.

For the foregoing reasons, the Court **OVERRULES IN PART** Defendant's Objections (Doc. 139) and **ADOPTS IN PART** the Magistrate Judge's R&R (Doc. 134) on Defendant's Motion to Suppress Statements as the findings and disposition of the Court. (Doc. 86). The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Suppress (Doc. 86) as set forth herein.

**IT IS SO ORDERED** this 17th day of December, 2018.

_____
AMY TOTENBERG
UNITED STATES DISTRICT JUDGE